UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
(JACKSONVILLE DIVISION)
www.flmb.uscourts.gov

In re:

PRYXIE LIQUIDATION CORP., *et al.*[1]

    Debtors.

_____/

MARK C. HEALY of Michael Moecker &
Associates, Inc., Liquidating Trustee under the
Liquidating Trust Agreement formed and
Implemented pursuant to the Debtors' confirmed
First Amended Chapter 11 Plan of Liquidation,

    Plaintiff,

v.

DAOPING BAO,

    Defendant.

_____/

CASE NO. 3:16-BK-002232-JAF
CHAPTER 11
(Jointly Administered)

ADV. NO.

## FIRST AMENDED ADVERSARY COMPLAINT FOR DAMAGES AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

The Plaintiff, Mark C. Healy (the "Trustee" or "Plaintiff") of Michael Moecker &

Associates, Inc., in his capacity as Liquidating Trustee under the Liquidating Trust Agreement

formed and implemented pursuant to the First Amended Plan of Liquidation of the above captioned

Chapter 11 Debtors (collectively, the "Debtors, "Premier," or the "Company"), files this First

Amended Adversary Complaint for Damages and Other Relief and Demand for Jury Trial against

---

[1]The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Pryxie Liquidation Corp. (4922); Pryxie Liquidation 1P LLC (3101); Pryxie
Liquidation 2ALLC (3101); Pryxie Liquidation 5I LLC (5075); Pryxie Liquidation 3N Inc. (9246); Pryxie
Liquidation 4M LLC (3867), and Pryxie Liquidation 6D Corp. (7309).



the Defendant Daoping Bao (the "Defendant" or "Bao"), and says:

## JURISDICTION & VENUE

1.      This adversary proceeding is brought by Plaintiff against the Defendant as a former officer, director, manager, employee, and/or *de facto* control person of the Debtors, seeking damages for breach of fiduciary duty, the avoidance and recovery of avoidable transfers, and for other relief, resulting from bad faith acts and omissions that harmed the Debtors, their creditors, and their shareholders.

2.      This Court (the "Bankruptcy Court") has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

3.      This action alleges claims that are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O), along with non-core claims.

4.      Pursuant to Fed. R. Bankr. P. 7008, the Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Court, subject to Plaintiff's demand for and right to a trial by jury before the District Court as set forth below. The Plaintiff does not consent to a jury trial by the Bankruptcy Court.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a), as this adversary proceeding arises under title 11 or arises under or relates to cases under title 11 of the United States Code (the "Bankruptcy Code"), which are pending in this district.

## THE PARTIES TO THIS ACTION

### The Plaintiff

6.      Premier Exhibitions, Inc. n/k/a Pryxie Liquidation Corp. (the "Company" or "Premier Exhibitions") was a former NASDAQ publicly traded parent holding company that owned and operated a family of subsidiaries and affiliates that collectively provided museum-

quality touring exhibitions world-wide, including artifacts recovered from the infamous RMS Titanic shipwreck.

7.      On June 14, 2016 (the "Petition Date"), Premier Exhibitions, along with its various affiliated debtor subsidiaries and affiliates, filed voluntary Chapter 11 bankruptcies before this Court [Main Case ECF No. 1].

8.      By Order dated October 16, 2019, the Bankruptcy Court approved confirmation of the Debtors' First Amended Plan of Liquidation (the "Plan") [ECF No. 231], which appointed the Plaintiff as Liquidating Trustee under the Liquidating Trustee Agreement formed and implemented under the confirmed Plan, and who is now the duly appointed and acting fiduciary with standing to prosecute the claims that are the subject of this action.

9.      By Notice of Effective Date dated November 6, 2019, the Debtors advised the Court, creditors, interest holders, and other parties in interest that on October 31, 2019, the Effective Date of the Plan occurred, and that all conditions precedent to the effectiveness of the Plan as set forth in Article 13 therein have either been satisfied or waived in accordance with the Plan and Confirmation Order.

10.     By Notice of Name Change dated November 6, 2019 [ECF No. 247], the Debtors disclosed the following name changes:

| Old Name (f/k/a) | New Name |
| --- | --- |
| Premier Exhibitions, Inc. | Pryxie Liquidation Corp. |
| Premier Exhibitions Management, LLC | Pryxie Liquidation 1P LLC |
| Premier Exhibitions International, LLC | Pryxie Liquidation 5I LLC |
| Premier Exhibitions NYC, Inc. | Pryxie Liquidation 3N Inc. |

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

| Old Name (f/k/a) | New Name |
|---|---|
| Premier Merchandising, LLC | Pryxie Liquidation 4M LLC |
| Dinosaurs Unearthed Corp. | Pryxie Liquidation 6D Corp. |
| Arts and Exhibitions International, LLC | Pryxie Liquidation 2A LLC |

### **The Defendant**

11.     The Defendant, DAOPING BAO, is an individual that from and after November 2, 2015, was a member of the board of directors, the Executive Chairman of the Board, President, and Chief Executive Officer of the Company. At all times material hereto, Bao was acting within the scope of his duties as an officer, director, and Chairman of the Board of the Company and, in so doing, he had or should have had intimate knowledge and understanding of, and was materially involved in and with, all material financial, operational, regulatory, accounting, and/or business related affairs and functions of the Debtors.

### **MATERIAL NON-PARTIES TO THIS ACTION**

12.     The material non-parties to this action referenced in this Complaint are:

a.     Dinoking Tech Inc. ("DinoKing") is a British Columbia, Canada holding company that operated under the name Dinosaurs Unearthed which, at all times material hereto, was owned and controlled by Defendant Bao. Prior to the Petition Date, DinoKing touted itself as an industry-leading traveling exhibition company with a range of exhibition products designed and developed by "its creative and innovative team of experts and scientific advisors."[2] In a press

---

[2] According to DinoKing, its exhibition products included Dinosaurs Unearthed, Dinosaurs Alive!, Extreme Dinosaurs, Xtreme BUGS!, and Creatures of the Deep that created "outstanding immersive guest experiences that are engaging, entertaining and grounded in current science." Since its launch in 2007, DinoKing claims to have opened exhibitions throughout North America, Australia, Asia, Europe and the Middle East, "inspiring millions of guests in museums, science centers, zoos, amusement parks and other unique venues."

4



release dated November 2, 2015, Premier Exhibitions and DinoKing announced a merger of the

two companies:

> Premier Exhibitions, Inc. (NASDAQ: PRXI) ("Premier") a leading presenter of
> museum-quality touring exhibitions around the world, announced that on
> November 1, 2015, it acquired the outstanding shares of Dinoking Tech Inc.
> ("Dinoking") through the issuance of Premier shares and shares exchangeable
> for Premier shares. Premier previously announced that its shareholders voted in
> favor of the transaction on October 29, 2015. On November 1, 2015, Premier
> executed all agreements necessary to close on its acquisition of the Dinoking
> shares effective that date.
>
> On November 2, 2015, pursuant to the Merger Agreement, Premier's board of
> directors appointed Mr. Daoping Bao as the Executive Chairman of the Board,
> President and Chief Executive Officer of Premier, and each subsidary of the
> company, as of the closing of the merger of Premier and Dinoking. Michael
> Little, who had served as Premier's Interim Chief Executive Officer, will
> continue to serve as Premier's Chief Financial Officer and Chief Operating
> Officer.
>
> In addition, on November 2, 2015, the board of directors increased its size to
> seven and appointed four new directors to the board – Daoping Bao, Premier's
> new Chief Executive Officer, Michael Evans, a principal at Evans & Evans, an
> international investment banking firm, Sid Dutchak, Calgary based
> businessman with a background in corporate restructuring and public company
> management, and Mingcheng Tao, former Chief Executive Officer and director
> of BesTV Network Television Technology Development Co., Ltd.

      b.    MICHAEL EVANS ("Evans") is an individual that from and after November 2,

2015, was a member of the board of directors of the Company until he submitted his resignation on June

13, 2016. At all times material hereto, Evans was acting within the scope of his duties as a director of the

Company and, in so doing, he had or should have had intimate knowledge and understanding of, and was

materially involved in and with, all material financial, operational, regulatory, accounting, and/or business

related affairs and functions of the Debtors.

      c.    SID DUTCHAK ("Dutchak") is an individual that from and after November 2,

2015, was a member of the board of directors of the Company through and subsequent to the Petition Date.

At all times material hereto, Dutchak was acting within the scope of his duties as a director of the Company

and, in so doing, he had or should have had intimate knowledge and understanding of, and was materially involved in and with, all material financial, operational, regulatory, accounting, and/or business related affairs and functions of the Debtors.

        d.      MINGCHENG TAO ("Tao") is an individual that from and after November 2, 2015, was a member of the board of directors of the Company until his resignation on July 21, 2016. At all times material hereto, Tao was acting within the scope of his duties as a director of the Company and, in so doing, he had or should have had intimate knowledge and understanding of, and was materially involved in and with, all material financial, operational, regulatory, accounting, and/or business related affairs and functions of the Debtors.

        e.      JEROME HENSHALL ("Henshall") is an individual that from and after June 17, 2016, was a member of the board of directors of the Company and was also appointed as Chair of the Audit Committee of the Board and was qualified as an Audit Committee financial expert. In addition, on July 21, 2016, he was appointed as Chief Financial Officer. At all times material hereto, Henshall was acting within the scope of his duties as a director, officer, and/or Chair of the Audit Committee of the Company and, in so doing, he had or should have had intimate knowledge and understanding of, and was materially involved in and with, all material financial, operational, regulatory, accounting, and/or business related affairs and functions of the Debtors.

        f.      MARK BAINS ("Bains") is an individual that from and after July 22, 2016, was a member of the board of directors of the Company. At all times material hereto, Bains was acting within the scope of his duties as a director of the Company and, in so doing, he had or should have had intimate knowledge and understanding of, and was materially involved in and with, all material financial, operational, regulatory, accounting, and/or business related affairs and functions of the Debtors.

        g.      GUO "DAVID" DING ("Ding") is an individual that from and after July 22, 2016, was a member of the board of directors of the Company. At all times material hereto, Ding was acting within the scope of his duties as a director of the Company and, in so doing, he had or should have had

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

intimate knowledge and understanding of, and was materially involved in and with, all material financial, operational, regulatory, accounting, and/or business related affairs and functions of the Debtors. (Bao and the foregoing individuals shall sometimes collectively be referred to herein as the "Former D&Os.")

## INTRODUCTION & PRELIMINARY STATEMENT

13.     For over a decade, Premier Exhibitions and its affiliated Debtors collectively engaged in the business of developing, deploying, and operating "unique" exhibition products presented to the public in exhibition centers, museums, and non-traditional venues. Income from the exhibitions was generated primarily through ticket sales, third-party licensing, sponsorships, and merchandise sales.

14.     The Company initially became renowned for its Titanic exhibitions that presented the story of the ill-fated ocean liner RMS Titanic which, according to Premier Exhibitions:

> captivated the imaginations of millions of people throughout the world since 1912 when on her maiden voyage she struck an iceberg and sank in the North Atlantic approximately 400 miles off the coast of Newfoundland, Canada. More than 1,500 of the 2,228 lives on board the Titanic were lost.

15.     Prior to the Petition Date, the Debtors were offering the following exhibitions:

- Titanic: The Artifact Exhibition
- Titanic: The Experience
- Bodies . . . The "Exhibition" and "Bodies Revealed"
- The Discovery of King Tut
- Saturday Night Live: The Exhibition
- Real Pirates

16.     The Debtors' gross revenues on an unaudited basis were approximately $25,000,000 to $30,000,000 per year. From January 1, 2016 to March 31, 2016, they generated approximately $6,300,000 in unaudited gross revenues.

17.     As of June 9, 2016, there were 65,000,000 shares of Premier common stock, $.0001 par value authorized, of which 7,938,396 shares were issued, of which 7,938,195 were

7



outstanding.

18.     During the several months leading up to the Petition Date, the Debtors, as a direct result of the acts and omissions of management, faced mounting legal challenges, including multiple lawsuits.

19.     In their Case Management Summary filed with the Bankruptcy Court, the Debtors disclosed assets totaling approximately $36,000,000, with liabilities of approximately $3,000,000 owed to secured creditors, and $12,000,000 owed to general unsecured creditors, primarily consisting of third-party vendors.

20.     Per the proof of claim register on file with the Clerk of the Court, in excess of $35 million of claims have been filed against the estates of the Debtors, with no remaining hard assets to liquidate or cash to distribute to creditors or shareholders. These liabilities exist and/or remain unpaid, and are the direct result of the acts and omissions of Bao detailed herein.

21.     From and after November 2, 2015, Bao, lacking good faith, breached and/or abdicated his fiduciary duties of loyalty, care, and good faith to the Company and its creditors and shareholders by, among other acts and omissions: (i)  engaging in action or inaction in furtherance of the interests of insiders and/or others, rather than in the best interests of the Debtors; (ii) engaging in action or inaction that was designed to, and did, decrease the Debtors' enterprise value and liquidation value for the benefit of the interests of insiders and/or others, rather than in the best interests of the Debtors; (iii) failing to act to ensure adequate capitalization of the Debtors, failing to consider options and alternatives to effectuate same, and otherwise failing to act to maximize the Debtors' enterprise value and liquidation value; and (iv) secretly participating in, and engaging in conduct which was designed to, and did, reduce the purchase price of the sale of the Company's business assets (the "Business Assets") in the Company's bankruptcy case. These breaches caused

8

substantial damage and harm to the Company, its creditors, and its shareholders.

22.     From and after November 2, 2015, Evans, Dutchak, Tao, Henshall, Bains, and Ding, lacking good faith, breached and/or abdicated their fiduciary duties of loyalty and care by, among other acts and omissions: (i) failing to fully or adequately monitor and oversee Bao and the Company; (ii) failing to implement adequate safeguards and controls necessary and appropriate for the Company's post-DinoKing transaction financial, operational, regulatory, accounting, and/or business related affairs and functions; (iii) engaging in action or inaction, or otherwise allowing Bao to engage in action or inaction, in furtherance of the interests of insiders and/or others, rather than in the best interests of the Debtors; (iv) allowing or otherwise failing to prevent the decrease of the Debtors' enterprise value and liquidation value in furtherance of the interests of insiders and/or others, rather than in the best interests of the Debtors; (v) post-DinoKing transaction, failing to properly monitor and oversee Bao and the Company, and failing to implement or follow adequate safeguards and controls to ensure adequate capitalization of the Debtors, adequate consideration of options and alternatives to effectuate same, and maximization of the Debtors' enterprise value and liquidation value; and (vi)  failing to properly monitor and oversee Bao, and failing to implement and follow adequate safeguards and controls, to prevent Bao from secretly participating in, and engaging in conduct which was designed to, and did, reduce the purchase price of the sale of the Company's Business Assets in the Company's bankruptcy case. These breaches caused substantial damage and harm to the Company, its creditors, and its shareholders.

23.     In so doing, from and after November 2, 2015, Evans, Dutchak, Tao, Henshall, Bains, and Ding utterly failed to implement reporting information systems or controls or, having implemented any such systems or controls, consciously failed to monitor or oversee Bao and the Company's operations, thereby disabling themselves from being informed of material risks and

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

problems requiring their attention.  These breaches caused substantial damage and harm to the Company, its creditors, and its shareholders.

24.     As a result of Bao's acts and omissions described herein, the Company, its creditors, and its shareholders sustained damages, and any and all claims Bao has or may attempt to assert against the bankruptcy estates of the Company or any of its subsidiaries should be disallowed in full and/or equitably subordinated.

## FACTS SUPPORTING THE CLAIMS

### A.     Premier Exhibitions' Merger with DinoKing

25.     On November 1, 2015, DinoKing, which was managed by Bao, and Premier Exhibitions closed on a merger of the two companies.

26.     PacBridge Capital Partners (HK) Ltd. ("PacBridge") served as DinoKing's financial advisor in connection with this merger.

27.     After the merger closed on November 1, 2015, Bao, Evans, Dutchak, and Tao joined the board effective November 2, 2015.

### B.     Bao, Evans, Dutchak, and Tao: (i) Fail to Ensure Adequate Capitalization, (ii) Fail to Fully and Properly Consider Options and Alternatives, and (iii) Fail to Maximize Debtors' Enterprise Value and Liquidation Value

28.     From and after November 2, 2015, Bao, lacking good faith, and in breach and/or abdication of his fiduciary duties, failed to act to ensure adequate capitalization of the Debtors, failed to fully and properly consider options and alternatives to effectuate same, and otherwise failed to act to maximize the Debtors' enterprise value and liquidation value.

29.     In fact, as described in more detail below, Bao secretly participated in, and engaged in conduct which was designed to, and did, reduce the enterprise value, liquidation value, and Business Assets value of the Debtors so that an insider entity could purchase the Business Assets



55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

at a substantially decreased price, in furtherance of the interests of insiders and/or others to the severe detriment of the Debtors, its creditors, and its shareholders.

30.     From and after November 2, 2015, Evans, Dutchak, and Tao, meanwhile, lacking good faith, and in breach and/or abdication of their fiduciary duties, allowed or otherwise failed to prevent inadequate capitalization of the Debtors, failed to properly consider other options and alternatives, and permitted the decrease of the Debtors' enterprise value, liquidation value, and Business Assets value, in furtherance of the interests of insiders and/or others, rather than in the best interests of the Debtors, by either actively acting in furtherance of such insider interests rather than the interests of the Debtors or by completely failing to fully or properly monitor and oversee Bao, and implement and follow adequate safeguards and controls, to prevent Bao from secretly participating in, and engaging in conduct which was designed to, and did, reduce the enterprise value, liquidation value, and Business Assets value of the Debtors so that an insider entity could purchase the Business Assets at a substantially decreased price.

### C.     <u>The Debtors File Bankruptcy and Sell the Titantic Artifacts at a Substantially Decreased Price to Bao's Insider</u>

31.     On June 14, 2016 (the "Petition Date"), Premier and its affiliated Debtors filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code.

32.     On, around, and subsequent to the Petition Date, the composition of the Board was modified as follows: (i) Evans resigned effective June 13, 2016; (ii) Tao resigned effective July 21, 2016; (iii) Henshall joined the Board and was appointed as Chair of the Audit Committee effective June 17, 2016, and was also appointed Chief Financial Officer effective July 21, 2016; (iv) Bains joined the Board effective July 22, 2016, and (v) Ding joined the Board effective July 22, 2016.

Agentis

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

33.     Six days after the Petition Date, Premier Exhibitions moved for an order authorizing it to market and sell certain of its artifacts that had been salvaged from the Titanic wreck site (collectively, the "Artifacts"). [*See* Main Case ECF No. 28.]

34.     As is reflected in the motion, an appraiser valued the Artifacts at over approximately $189,000,000.00 in 2007 and at approximately $218,000,000.00 in 2014. [*See id.* at ¶22.]

35.     As is further reflected in the motion, a sale of just a small subset of the Artifacts would have enabled the Company to pay all of its creditors in full and allowed its common shareholders to retain their equity positions as the Company emerged from bankruptcy. [*See id.* at ¶27.]

36.     Moreover, on June 15, 2018, the Debtors sought approval of, among other things, certain procedures related to the Business Assets in which they acknowledged that a subset of the Artifacts known as the "French Artifacts" were not subject to any sale restrictions.  [Main Case ECF No. 1055, ¶11.]

37.      Similarly, the Company moved for the Court's approval of sale procedures  that "incorporate[d] the ability for interested purchasers to submit partial bids for less than all assets" of the Company. [Main Case ECF No. 811, ¶6.]

38.     However, the Company did not solicit bids for certain Artifacts, and no Artifacts were ever sold, despite the fact that the proceeds from the sale of just a small portion of the Artifacts could have prevented the Company's creditors from being harmed, and shareholders losing their investments.

39.     Instead, the Company solicited PacBridge for an offer to purchase the Business Assets as a whole.

**A**gentis

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

40.     Upon information and belief, PacBridge was solicited because Bao, who was a director, CEO, and shareholder of the Company, sought to benefit an insider entity by allowing such insider to purchase the Business Assets at a substantially decreased price to the detriment of the Company and its stakeholders.

41.     In fact, under the initial term sheets submitted by PacBridge, PacBridge would have acquired the Business Assets for an amount between $50,000,000.00 and $65,000,000.00, less than a third of the value of the Artifacts alone.

42.     Moreover, upon information and belief, Bao secretly advised and provided inside information to PacBridge, which caused PacBridge to reduce the amount it was willing to pay for the Business Assets from over $50,000,000.00 to $30,000,000.00.

43.     Upon the Equity Committee's objection, PacBridge ceased its efforts to close on a purchase of the Business Assets, but only for a brief period.

44.     By October 2018, PacBridge had linked up with a group of Chinese investors, formed Premier Acquisition Holdings LLC ("Premier Holdings"), and offered to purchase the Business Assets for a mere $19,500,000.00.

45.     These Chinese investors were insiders of Bao, and consisted of a former business partner of Bao's, a friend of Bao's, and a relative of Bao's.

46.     In furtherance of the interests of Bao's insider Premier Holdings, and to the detriment of the Debtors, Premier Exhibition's board of directors, which included Dutchak, Henshall, Bains, and Ding, approved or otherwise allowed the sale of the Business Assets to insider Premier Holdings at the substantially reduced price of $19,500,000.00, which resulted in substantial damage to the Company, its creditors, and other stakeholders, including a total loss of the investments held by the Company's shareholders.

A agentis

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

47.    The price per share of Premier Exhibitions' stock was approximately $1.18 on November 4, 2015, and, according to Premier Exhibitions' last 10-Q, Premier Exhibitions had 4,917,222 outstanding shares on October 13, 2015, before the DinoKing merger.

48.    As these figures reflect, the Company's shareholders alone lost millions of dollars as a direct and proximate result of the Former D&Os' wrongful action and inaction.

**D.**    **The Debtors' Pre-Petition Insolvency**

49.    From and after November 2, 2015, through and including the Petition Date, the Debtors were insolvent and/or intended to incur or believed they would incur debts that would be beyond their ability to pay as such debts became due or matured.

50.    Thus, the Former D&Os each owed fiduciary duties to the Debtors and their non-insider creditors and shareholders during all times material to the claims asserted against them herein.

**E.**    **The Company Suffers Substantial Damage and Harm as the Direct Result of the Acts and Omissions of the Former D&Os**

51.    Subsequent to the November 1, 2015 DinoKing transaction, the Debtors sustained substantial damage and harm in the form of, among other things, a decrease in Premier's share price, enterprise value, and liquidation value as a direct result of the post- November 2, 2015 acts and omissions of Bao, Evans, Dutchak, Tao, Henshall, Bains, and Ding.

52.    Per the proof of claim registers maintained by the Clerk of the Court, over $35 million of claims have been filed and are pending against the Debtors' estates.

53.    As a direct and proximate result of the Former D&Os' acts and omissions, the Debtors have suffered damages that include, but that are not necessarily limited to: (i) the decrease in Debtors' enterprise value subsequent to November 2, 2015; (ii) the decrease in

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

Debtors' liquidation value subsequent to November 2, 2015; (iii) the decrease in Debtors' Business Assets value subsequent to November 2, 2015; (iv) the decrease in Debtors' market capitalization subsequent to November 2, 2015; (v) the decrease in Debtors' shareholder value subsequent to November 2, 2015; (vi) the difference between the price PacBridge initially indicated it was willing to pay for the Business Assets (i.e., between $50,000,000.00 and $65,000,000.00) and the price that Premier Holdings ultimately agreed to pay for the Business Assets (i.e., $19,500,000.00); (vii) the loss and/or depletion of material assets of the Debtors subsequent to November 2, 2015; (viii) the increase in the Debtors' liabilities subsequent to November 2, 2015; (ix) the Debtors' deepening and/or increased insolvency subsequent to November 2, 2015, as evidenced by, among other things, claims filed and pending against the Debtors' bankruptcy estates; (x) corporate waste subsequent to November 2, 2015; (xi) the Debtors' bankruptcy and associated administrative fees and expenses; (xii) the value of all avoidable transfers subsequent to November 2, 2015 pursuant to Chapter 5 of the Bankruptcy Code and/or under applicable state law, including all transfers to the Former D&Os and other insiders subsequent to November 2, 2015; and (xiii) other damages as may be ascertained through pre- or post-suit discovery, plus pre-judgment and post-judgment interest, and costs.

     **F.**     **Conditions Precedent**

    54.    All conditions precedent to the filing of this action have been waived, satisfied, excused, performed, or have occurred.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**

    The Plaintiff sues Defendant Bao and alleges:

    55.    The Plaintiff re-alleges paragraphs 1 through 54 above.

15



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

56.    This is a claim by the Plaintiff for breach of fiduciary duty against Bao based upon his acts and omissions as an officer and director of the Company.

57.    As an officer and director of Premier, from and after November 2, 2015, Bao owed Premier Exhibitions a fiduciary duty to discharge his duties in good faith, with the care an ordinarily prudent officer or director in a like position would exercise and in a manner reasonably believed to be in the best interests of Premier Exhibitions.

58.    Specifically, the duties of care, loyalty, and good faith under Florida law required Bao to put the interests of Premier Exhibitions above his own interests and those of others, and was not limited to the avoidance of disloyalty in the classic sense, i.e. self-dealing, personal gain, or a cognizable conflict of interest. In addition, in discharging his duties of care and loyalty, Bao was required to act in good faith, and would be in breach of the duties of care, loyalty, and good faith by acting with a purpose other than that of advancing the best interests of Premier Exhibitions, by acting in violation of applicable positive law, or by failing to act in the face of a known duty to act, thereby demonstrating a conscious disregard for his responsibilities. Bao was also required to ensure that he did not display a lack of diligence that was more culpable than simple inattention or failure to be informed of all facts material to his decisions, such that it was qualitatively more culpable than gross negligence.

59.    Additionally, the duty to exercise due care under Florida law required Bao to use that amount of care which ordinarily careful and prudent individuals would use in similar circumstances and to consider all material information reasonably available. In exercising the duty of due care, Bao could not engage in acts or omissions on behalf of Premier Exhibitions that resulted in a loss to such entity arising from decisions that: (i) were ill-advised, uninformed or that failed to consider material information; (ii) constituted an unconsidered failure of Bao to act in

**Agentis**

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

circumstances in which due attention would, arguably, have prevented the loss; (iii) were based upon an unintelligent or unadvised judgment; (iv) were grossly negligent, such as engaging in an irrational decision making process signifying more than ordinary inadvertence or inattention; or (v) resulted in a corporate strategy that reflected an indifference to the potential risk of harm to Premier Exhibitions, such that reasonable businesspersons would have carefully considered the obvious negative consequences. Moreover, under Florida law, the more significant the subject matter of the decision, the greater is the requirement to probe and consider alternatives. To further satisfy the duty of due care, a reasonable and informed deliberative process was required by attending meetings, asking questions, reviewing written materials, and otherwise becoming informed of relevant information reasonably available, and to seek the input of experts, such as investment bankers, attorneys, and accountants, and to provide materially accurate information.

60.    Furthermore, while Florida law provides that a Florida corporation may eliminate or limit the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, Bao's liability could not be limited under such statute, to the extent applicable: (i) for any breach of duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct, a conscious disregard for the best interests of the corporation and/or known or obvious risks, or a knowing violation of law; or (iii) for any transaction from which Bao derived an improper personal benefit. However, this exculpatory provision is not applicable to Bao's acts and omissions as an officer. Finally, Bao could not act loyally towards Premier Exhibitions unless he acted in the good faith belief that his actions were in the corporation's best interest.

61.    In regard to the facts alleged above, and lacking good faith, Bao exhibited a knowing, conscious, grossly negligent or reckless disregard for the best interests of Premier

Agentis
55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

Exhibitions and, except for his knowing, conscious, grossly negligent or reckless disregard of the facts, should have known of the risk of damage that ultimately befell Premier Exhibitions.

62.     Specifically, Bao actively engaged in breaches of fiduciary duties and otherwise abdicated his fiduciary duties of loyalty, good faith, and due care owed to Premier Exhibitions, with breaches that include, but that may not necessarily be limited to, the following: (i) engaging in action or inaction in furtherance of the interests of insiders and/or others, rather than in the best interests of the Debtors; (ii) acting or failing to act in a manner designed to, and which did, decrease the Debtors' enterprise value and liquidation value in furtherance of the interests of insiders and/or others, rather than in the best interests of the Debtors; (iii) failing to act to ensure adequate capitalization of the Debtors, failing to consider options and alternatives to effectuate same, and otherwise failing to act to maximize the Debtors' enterprise value and liquidation value; (iv) secretly participating in, and engaging in conduct which was designed to, and did, reduce the purchase price of the sale of Premier Exhibition's Business Assets; (v) failing to cause or require the implementation of or failing to follow adequate safeguards and controls in regard to material business, operational, regulatory, and financial functions; (vi) failing to prepare and provide materially accurate information that would have caused or otherwise enabled a reasonably informed analysis and decision-making process to, among other things, implement a wind down process to maximize value to Premier Exhibitions prior to the Petition Date; (vii) failing to fully or adequately inform himself in regard to material business, operational, regulatory and/or financial decisions or functions affecting Premier Exhibitions; and (viii) other breaches and proximately caused damages as may be ascertained through discovery.

63.     Each of the above breaches adversely impacted and conferred no benefit to Premier Exhibitions, and as a direct and proximate result of same, caused damage to Premier Exhibitions



**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

consisting of, *inter alia*: (i) the decrease in Debtors' enterprise value subsequent to November 2, 2015; (ii) the decrease in Debtors' liquidation value subsequent to November 2, 2015; (iii) the decrease in Debtors' Business Assets value subsequent to November 2, 2015; (iv) the decrease in Debtors' market capitalization subsequent to November 2, 2015; (v) the decrease in Debtors' shareholder value subsequent to November 2, 2015; (vi) the difference, at a minimum, between the price PacBridge initially indicated it was willing to pay for the Business Assets (i.e., between $50,000,000.00 and $65,000,000.00) and the price that Premier Holdings ultimately agreed to pay for the Business Assets (i.e., $19,500,000.00); (vii) the loss and/or depletion of material assets of the Debtors subsequent to November 2, 2015; (viii) the increase in the Debtors' liabilities subsequent to November 2, 2015; (ix) the Debtors' deepening and/or increased insolvency subsequent to November 2, 2015, as evidenced by, among other things, claims filed and pending against the Debtors' bankruptcy estates; (x) corporate waste subsequent to November 2, 2015; (xi) the Debtors' bankruptcy and associated administrative fees and expenses; (xii) the value of all avoidable transfers subsequent to November 2, 2015 pursuant to Chapter 5 of the Bankruptcy Code and/or under applicable state law, including all transfers to the Defendants and other insiders subsequent to November 2, 2015; and (xiii) other damages as may be ascertained through pre- or post-suit discovery, plus pre- judgment and post-judgment interest, and costs.

64.     Bao is liable for these damages.

WHEREFORE, the Plaintiff demands the entry of judgment against Bao for compensatory damages, consequential damages, special damages and punitive damages including, but not limited to: (i) the decrease in Debtors' enterprise value subsequent to November 2, 2015; (ii) the decrease in Debtors' liquidation value subsequent to November 2, 2015; (iii) the decrease in Debtors' Business Assets value subsequent to November 2, 2015; (iv) the decrease in Debtors' market

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

capitalization subsequent to November 2, 2015; (v) the decrease in Debtors' shareholder value subsequent to November 2, 2015; (vi) the difference, at a minimum, between the price PacBridge initially indicated it was willing to pay for the Business Assets (i.e., between $50,000,000.00 and $65,000,000.00) and the price that Premier Holdings ultimately agreed to pay for the Business Assets (i.e., $19,500,000.00); (vii) the loss and/or depletion of material assets of the Debtors subsequent to November 2, 2015; (viii) the increase in the Debtors' liabilities subsequent to November 2, 2015; (ix) the Debtors' deepening and/or increased insolvency subsequent to November 2, 2015, as evidenced by, among other things, claims filed and pending against the Debtors' bankruptcy estates; (x) corporate waste subsequent to November 2, 2015; (xi) the Debtors' bankruptcy and associated administrative fees and expenses; (xii) the value of all avoidable transfers subsequent to November 2, 2015 pursuant to Chapter 5 of the Bankruptcy Code and/or under applicable state law, including all transfers to the Defendants and other insiders subsequent to November 2, 2015; and (xiii) other damages as may be ascertained through pre- or post-suit discovery, plus pre-judgment and post-judgment interest, attorneys' fees, and costs.

## COUNT II
## OBJECTION TO CLAIMS

The Plaintiff sues the Defendant and alleges:

65.     The Plaintiff re-alleges paragraphs 1 through 64 above.

66.     This is an action objecting to the filed proofs of claim of, and any claims that have been or may be asserted by, the Defendant (collectively, the "Claims").

67.     The Plaintiff objects to the allowance and payment of the Claims and any other claim the Defendant may attempt to assert against the Debtors' estates pursuant to Section 502(b)(1) of the Bankruptcy Code on the bases that: (i) the Defendant does not have any viable

A agentis

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

claims against the Debtors' bankruptcy estate; (ii) such Claims are limited or barred under applicable state or federal law; and/or (iii) such Claims are barred in whole or in part by the doctrines of setoff and recoupment in light of the conduct by the Defendant described herein.

WHEREFORE, the Plaintiff demands judgment against the Defendant: (i) disallowing the Claims and any other claim the Defendant may attempt to assert against the estates in whole or in part; and (ii) for such other and further relief as the Court deems appropriate.

## COUNT III
## EQUITABLE SUBORDINATION

The Plaintiff sues the Defendant and alleges:

68.     The Plaintiff re-alleges paragraphs 1 through 67  above.

69.     This is an action seeking equitable subordination, pursuant to 11 U.S.C. § 510(c), of any and all Claims by Defendant against the Debtors' estates to the extent such Claims are not disallowed in full.

70.     As a direct and proximate result of the Defendant's acts and omissions described herein, the Debtors, their creditors, and their shareholders sustained damages that include, but that are not necessarily limited to: (i) the decrease in Debtors' enterprise value subsequent to November 2, 2015; (ii) the decrease in Debtors' liquidation value subsequent to November 2, 2015; (iii) the decrease in Debtors' Business Assets value subsequent to November 2, 2015; (iv) the decrease in Debtors' market capitalization subsequent to November 2, 2015; (v) the decrease in Debtors' shareholder value subsequent to November 2, 2015; (vi) the difference, at aa minimum, between the price PacBridge initially indicated it was willing to pay for the Business Assets (i.e., between $50,000,000.00   and $65,000,000.00) and the price that Premier Holdings ultimately

**A**gentis

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

agreed to pay for the Business Assets (i.e., $19,500,000.00); (vii) the loss and/or depletion of material assets of the Debtors subsequent to November 2, 2015; (viii) the increase in the Debtors' liabilities subsequent to November 2, 2015; (ix) the Debtors' deepening and/or increased insolvency subsequent to November 2, 2015, as evidenced by, among other things, claims filed and pending against the Debtors' bankruptcy estates; (x) corporate waste subsequent to November 2, 2015; (xi) the Debtors' bankruptcy and associated administrative fees and expenses; (xii) the value of all avoidable transfers subsequent to November 2, 2015 pursuant to Chapter 5 of the Bankruptcy Code and/or under applicable state law, including all transfers to the Defendant and other insiders subsequent to November 2, 2015; and (xiii) other damages as may be ascertained through pre- or post-suit discovery, plus pre- judgment and post-judgment interest, and costs.

71.     Therefore, any and all Claims the Defendant has asserted or could assert against the bankruptcy estates of Premier Exhibitions or any of its subsidiaries should be equitably subordinated.

72.     Equitable subordination would not be inconsistent with the provisions of the Bankruptcy Code.

WHEREFORE, the Plaintiff demands entry of judgment against the Defendant: (i) disallowing the Claims in whole or in part; and/or (ii) equitably subordinating the Claims to the claims of all other creditors and shareholders in this case; and (iii) granting any and all other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL AND NON-CONSENT TO A JURY TRIAL BY AND BEFORE THE BANKRUPTCY COURT

73.     The Plaintiff hereby: (i) demands a trial by jury on all claims and issues triable by such; and (ii) requests in regard to such demand that the reference to the Bankruptcy Court not be

22



withdrawn, if at all, unless and until all discovery and all pre-trial motions and matters, including case dispositive motions, are disposed of and otherwise adjudicated by the Bankruptcy Court. The Plaintiff specifically does not consent to a jury trial by and before the Bankruptcy Court.

Respectfully submitted this 20th day of April, 2020.

AGENTIS, PLLC
*Counsel for Plaintiff*
55 Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel: (305) 722-2002

By: /s/ Robert P. Charbonneau
    Robert P. Charbonneau, Esq.
    Fla. Bar No. 968234
    Email: rpc@agentislaw.com
    Christopher B. Spuches. Esq.
    Fla. Bar No. 42456
    Email: cbs@agentislaw.com
    Jason A. Martorella, Esq.
    Fla. Bar No. 92868
    Email: jam@agentislaw.com

-and-

CIMO MAZER MARK PLLC
*Co-Counsel for the Plaintiff*
100 S.E. 2nd Street, Suite 3650
Miami, FL 33131
Tel: (305) 374-6480
Fax: (305) 374-6488

By: /s/ David C. Cimo
    David C. Cimo, Esq.
    Fla. Bar No. 775400
    Email: dcimo@cmmlawgroup.com
    Marilee A. Mark, Esq.
    Fla. Bar No. 725961
    Email: mmark@cmmlawgroup.com